

# FASULO, SHALLEY & DiMAGGIO L.L.P.
### ATTORNEYS AT LAW

LOUIS V. FASULO *
MARGARET M. SHALLEY
CHARLES DI MAGGIO
* ADMITTED NJ

OF COUNSEL
DOUGLAS KAHAN

January 31, 2008

**VIA ECF & HAND-DELIVERY**
Honorable Jed S. Rakoff
United States District Court
Southern District of New York         SENTENCING MEMORANDUM
500 Pearl Street
New York, New York 10007

          Re: ***United States v. Sonnel Robles***
             **07 CR 852 (JSR)**

Dear Judge Rakoff:

  I am the attorney for the defendant, Sonnel Robles ("Robles") in the above-referenced matter. On October 23, 2007, Mr. Robles appeared before the Court and pled guilty to Count One of the above-referenced Indictment, pursuant to a Plea Agreement. Count One charges Mr. Robles with conspiring to obstruct, delay and affect commerce and the movement of articles and commodities in commerce by robbery, in violation of Title 18 U.S.C. §1951(a). Sentencing is scheduled to take place on February 6, 2008. This letter is respectfully submitted, pursuant to Rule 32 Fed. R. Crim. P., to advise the Court of several matters that the defendant will raise to aid in the determination of the appropriate sentence.

**BACKGROUND:**

  Sonnel Robles was born in August 1981, in the Bronx, New York. (Pre-sentence Report ¶58, hereinafter referred to as "PSR"). He is the only child born to the consensual relationship between Nelson Robles and Martha Rodriguez. (PSR ¶58) Unfortunately, Nelson Robles suffered from a drug addiction which caused him to become abusive at times, and he was in large part an absentee father during Robles' early childhood years. Nelson Robles passed away while in his thirties (when the defendant

was only 5 years old), after developing severe pneumonia related to HIV. The defendant's mother Martha, who is 43 years old and mentally ill, is currently in a psychiatric ward at the Manhattan Psychiatric Hospital on Wards Island in Manhattan. (PSR ¶58) Ms. Rodriguez has been institutionalized since the defendant was 11 years old. She suffers from manic depression and delusions. As a result of Robles' mother's psychiatric problems, the defendant's maternal grandmother, Maria Rodriguez, raised Robles since his birth. (PSR ¶59) When asked about his childhood, Robles expressed that "his childhood was good, except that he did not see his parents regularly." (PSR ¶59) Robles' grandmother took Robles at least twice a month to visit his mother in the psychiatric ward on Wards Island. Until his arrest for the instant offense, Robles visited his mother several times per month.

When Robles was 14 years old, his grandmother, who was also HIV positive, became very ill and was no longer able to care for her grandson. The defendant went to live with his maternal aunt, Maria Navarro, age 38, in Manhattan. (PSR ¶58) Subsequently, Robles' grandmother passed away, and he became emotionally distraught. Ms. Rodriguez's passing resulted in the loss of the only stable caregiver that Robles' had in his life. For some time thereafter, Robles became withdrawn and started hanging out with the wrong crowd. As a result, he missed numerous days of school following the death of his grandmother. When interviewed by Probation, Robles' aunt, Ms. Navarro, expressed that the defendant was always a well-behaved and respectful child and she was upset to learn about his involvement in the instant offense. (PSR ¶62-63) She feels that Robles made a mistake and she truly believes that he will be useful and productive member of society following his period of incarceration in this matter. (PSR ¶63) Ms. Navarro has also written a heartfelt letter to the Court, attached hereto as Exhibit "1," in which she discusses the importance of stability in children's lives and how sorry she is that her nephew did not have stable loving parents during his formative years. In her letter, Ms. Navarro also discusses the physical and emotional abuse that Robles suffered at the hands of a "monster," who was his mother's boyfriend after his father's death. Unfortunately, Robles is not able to discuss, or come to terms with the abuse of his grandmother by his grandfather or his abuse by his mother's boyfriend that only ended with her institutionalization.

Robles lived with his aunt for approximately 2 years, and then moved to Massachusetts with some friends. The defendant lived in Massachusetts for several years, returning to New York to live with his aunt briefly in 2002, and permanently in 2005, following his release on state charges. (PSR ¶58) In October 2005, Robles met Pamela Hayes and they began dating. (PSR ¶59) Ms. Hayes, age 26, resides in the Bronx, New York with her parents and siblings, where she is employed at Pincover Industries. In an interview with Probation, Ms. Hayes, who is now the defendant's fiancée, described Robles as a gentle, patient and kind-hearted person who she shares a very loving relationship with. Ms. Hayes added that she is looking forward to marrying Robles in the near future. (PSR ¶59) Attached hereto as Exhibit "2," is a heartfelt letter from Ms. Hayes, describing how Robles' naivety resulted in him being befriended by the wrong crowd. Unfortunately, those individuals lured him back into drugs, which clouded his judgment and played a large part in his decision to become involved in the instant

offense. In her letter, Ms. Hayes also adds that Robles takes full responsibility for his actions and that she is working hard to build a support system for him outside of prison, so that Robles is able to rehabilitate himself and be the honest, law abiding and hardworking man she fell in love with. Ms. Hayes' family members and friends, also hold Robles in very high regard and they believe that he has tremendous potential. Attached hereto as Exhibit "3," are letters to the Court from Ms. Hayes' father, Mr. Edwin Rivas, and her youngest brother, Andrew Rivas, as well as two character letters from Ms. Sandy Kootkias and George E. Waters.

Robles attended John F. Kennedy High School in the Bronx, until he completed the 11th grade in 1999. (PSR ¶69) The defendant discontinued his studies when he moved to Massachusetts. Despite the fact that he never graduated from high school, Robles has a tremendous amount of determination, and worked diligently to provide for himself and his fiancée. In 2002, Robles was employed at Macy's Department Store as an overnight stock worker. (PSR ¶74) During this time, he also purchased clothing at wholesale prices and sold it to individuals in the neighborhood. Between 2005 and March 2006, Robles did maintenance work at Fieldston Billiards in Manhattan and also was employed as a cook in the cafeteria at an Equinox Fitness Center. (PSR ¶72-73) Robles' earned approximately $530 per week as a cook. From June 2006 until May 2007, Robles did maintenance work at Go West Entertainment in Manhattan, where he earned $10 per hour. (PSR ¶71) After serving a period of incarceration for the instant offense, Robles hopes to pursue a career in masonry/brick laying, and gradually save money so that he will one day be able to fulfill his dream of attending culinary school.

The defendant has a history of substance abuse dating back to 1994, when at the age of 13, he began to smoke marijuana at least once per week. (PSR ¶67) Robles' use of the drug eventually escalated to daily smoking of marijuana, and he continued to use marijuana up until his arrest for the instant offense. When questioned about his drug use, Robles admitted that his drug use has caused him problems and impaired his judgment. In the summer of 1998, Robles tried angel dust for the first time, but he did not use the drug again until March 2007. (PSR ¶67) After trying angel dust again, Robles became hooked on the drug and he began abusing it on a daily basis. The defendant also tried Ecstasy in 2007 and subsequently started using it twice per week thereafter. (PSR ¶ 67) Robles has admitted that he was under the influence of angel dust during the instant offense which significantly impaired his ability to control his behavior, and led to the violent actions taken against the victims, which he sincerely regrets. (PSR ¶67) When interviewed by Probation, Robles acknowledged his need for substance abuse treatment. (PSR ¶68) He believes that he would benefit greatly from a drug treatment program as part of his sentence.

Based on my own observations over the time spent with Mr. Robles I have concluded that he has fully accepted responsibility for his participation in this crime and truly regrets the effect that any term of incarceration will have on his family and his fiancée, Ms. Hayes. The defendant also expresses deep regret for his actions and any physical or psychological trauma suffered by the victims. He appreciates the seriousness of his crime.

**THE PRESENTENCE REPORT:**

Sonnel Robles has no objection to the following findings and conclusions of the Pre-sentence Report:

1. That the Base Offense Level for a violation of Title 18 U.S.C §1951 is 20, pursuant to §2B3.1(a). (PSR ¶26);

2. That because a firearm was discharged during the attempted robbery, the offense is increased by 7 levels, pursuant to §2B3.1(b)(2)(A). (PSR ¶27);

3. That because a victim sustained serious bodily injury, the offense is increased by 4 levels, pursuant to §2B3.1(b)(3)(B). (PSR ¶28);

4. That because the taking of marijuana was the object of the offense, the offense level is increased by 1 level, pursuant to §2B3.1(b)(6). (PSR ¶29);

5. That the Adjusted Offense Level (Subtotal) is 32. (PSR ¶33);

6. That a three (3) level reduction is warranted, pursuant to Guideline §3E1.1(a) and (b), because the defendant clearly demonstrated acceptance of responsibility, through his allocution and timely notification of his intention to do. (PSR ¶34);

7. That the Total Offense Level is 29. (PSR ¶37);

8. That the Defendant's Criminal History Category is III, based on a total of 5 criminal history points. (PSR ¶81);

9. That based upon a Total Offense Level of 29 and Criminal History Category of III, the guideline term of imprisonment is 108 to 135 months. (PSR ¶79).

**Objections to the PSR** – The objections lodged below are to specific descriptions as set forth in the PSR; the format herein corresponds to that of the PSR, by paragraph:

1. ¶62 – The defendant respectfully objects to the sentence which states that he lived with his aunt in Manhattan from 2002 until 2006. Mr. Robles moved to Massachusetts with friends in approximately 1999 and he returned to New York to live with his aunt, after he was released following his imprisonment on state charges for a brief period in 2002, and then again in 2005. Mr. Robles lived with his aunt, Maria Navarro, until May 2006, when he moved to the Bronx with his fiancée, Ms. Hayes.

2.  ¶66 – The defendant respectfully objects to the sentence which states that he was treated at Columbia Presbyterian Hospital in 1998 or 1999 after a bicycle accident. Mr. Robles received treatment in 1991 for an injury he sustained while playing baseball.

3.  ¶72 - The defendant respectfully requests that paragraph 72 be corrected to reflect that Robles worked at Go West Entertainment from June 26, 2006 until May 10, 2007.

**THE APPROPRIATE SENTENCE:**

It is respectfully requested that the Court impose a sentence of 87 months' imprisonment followed by a 3 year term of supervised release. The advisory guideline imprisonment range in this case is 108 to 135 months followed by a supervised release term of at least 2 years, based on a Total Offense Level of 29 and a Criminal History Category of III. Given Robles' unique history and characteristics, the Court may give a sentence that is outside of the guideline range in view of the factors to be considered in imposing a sentence set forth in Title 18 U.S.C. § 3553(a). For the proceeding reasons, a sentence below the advisory guideline range is appropriate and warranted in Robles' case.

Title 18, United States Code, Section 3553(a) directs a sentencing Court to impose a reasonable sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of the sentencing factors outlined in the subsection. (§3553(a)(1)). In the recent case of *Gall v. United States*, 128 S.Ct. 586, 597 (Dec. 10, 2007), the United States Supreme Court held that while the Guidelines should be the "the starting point and the initial benchmark" of a reasonable sentence, the sentencing judge "may not presume that the Guideline range is reasonable" and "must make an individualized assessment based on the facts presented." The Court also "reject[ed] an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." Thus, a sentencing Court, after considering the advisory Guidelines, is now free to fashion a reasonable sentence that it deems appropriate based upon all of the sentencing factors set forth in 18 U.S.C. § 3553(a). So long as the record demonstrates that the district court considered the §3553(a) factors and supported its sentence with a rationale that is supported by the record, the sentence should stand. The question for this Court to decide is whether a sentence below the guideline range would be a reasonable sentence when all of the factors and objectives of §3553(a) are weighed. For the following reasons, it is respectfully submitted that a sentence of 87 months' imprisonment followed by 3 years of supervised release would be sufficient but not greater than necessary.

The Court may give a sentence that is outside of the guideline range after considering the following 3553(a) factors:

**(1) the nature and circumstances of the offense and the history and characteristics of the defendant;**

It is undisputable that conspiring to commit a Hobbs Act Robbery is a serious offense. It is also indisputable that this robbery resulted in injury to Shawndi Renaux and the shooting of Luis Quiles by a co-defendant. However, when viewed against the backdrop of Robles' life, the offense stands in stark contrast to the man that Robles has become after enduring an abusive, unstable and difficult childhood. Robles' drug addicted father passed away when the defendant was 5. Robles' mother, who has been institutionalized with severe mental illness since Robles' was 11, was unable to care for her son. From his birth, the defendant was raised by his grandmother, until she became ill and Robles was sent to live with his maternal aunt. His grandmother suffered physical abuse at the hands of her husband which was witnessed by the defendant. From the time of his father's death, until his mother's institutionalization, Robles was physically and emotionally abused by her boyfriend. Robles has yet to come to terms with this abuse.

After his grandmother's passing, Robles became withdrawn and depressed as a result of losing the only stable caregiver that he had ever known. He was lured into the wrong crowd, and began using and selling drugs. Robles has been battling drug addiction since the age of 13, and in the months immediately prior to his involvement in the instant offense, his drug use escalated substantially and clouded his judgment. Notably, the defendant was not involved in the planning stages of the instant robbery. Surveillance and planning of the robbery was done by Quiles, Colon and the confidential informant. When Robles was heavily under the influence of narcotics (including angel dust and ecstasy), he agreed to participate in the offense.

The defendant's family and friends describe him as a hard working and very responsible individual whose character became tarnished when he became involved with drugs and the wrong crowd. There is no doubt, not only in Robles' mind, but also in the mind of his family, that Robles' poor decision making is greatly attributed to his drug addiction.

**(2) the need for the sentence imposed—**

**(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

As of the date of Robles' sentencing, he will have been incarcerated for approximately 8 months. Robles is aware of the seriousness of the crime he committed. He has expressed remorse and will never place himself in this position again. Notably, in the recent decision of *United States v. Pauley*, 2007 WL 4555520 (4th Cir. Dec. 28, 2007), the Fourth Circuit analyzed the Supreme Court's rulings in *Gall v. United States* and *Kimbrough v. United States* in the context of a significant downward departure, and upheld the district court's rationale for a below Guidelines sentence. The district court found that the defendant, who was convicted of possessing photographs of child pornography, warranted a lower sentence, because among other things: (1) he was deeply

6

remorseful; (2) besides the criminal conduct at issue, he was a good father and teacher; and (3) a lower sentence would allow Pauley to be rehabilitated through the counseling that he would receive during incarceration. On appeal, the Fourth Circuit found all of these factors to be valid considerations under §3553(a). *United States v. Pauley,* 2007 WL 4555520 at 6.

In this case, Robles has accepted full responsibly for his actions. Following his arrest, he gave a statement to authorities admitting his role in the offense. He also accepted full responsibility in his interview with the Probation Department and regrets any psychological and physical trauma suffered by the victims. Robles acknowledges his need for narcotics treatment in the future. He believes that he would benefit greatly from a drug treatment program as part of his sentence, particularly the 500-hour Comprehensive Residential Drug Abuse Program. A sentence of 87 months will be sufficient punishment for the offense and promote respect for the law.

(B) **to afford adequate deterrence to criminal conduct;**

Until the present time, the longest that Robles had spent in prison was a sentence of three (3) years on state charges for a controlled substance offense. As a result of his prior drug offense and his instant conviction for a crime of violence, if Robles commits a future offense, he will be classified as a career offender under the Guidelines. Robles is aware of this fact, and his potential to become a career offender offers significant and sufficient deterrence. He sees the effect that his incarceration has had on his family, especially his fiancée Pamela. Robles believes that with the proper drug treatment and a period of incarceration, he will be deterred from all future criminal conduct. Accordingly, a sentence of 87 months offers adequate deterrence to future criminal conduct.

(C) **to protect the public from further crimes of the defendant; and**

Robles has fully recognized the error of his ways, and his experiences since his June 2007 arrest have sufficiently deterred him from ever engaging in any further criminal conduct. With the proper treatment for his substance abuse problems and the support of his family, Robles will remain on the right side of the law.

(D) **to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

As previously stated, Robles is an excellent candidate for a drug treatment program. I respectfully ask this Court to recommend that Robles be placed in the 500-hour Comprehensive Residential Drug Abuse Program. Additionally, while incarcerated Robles will take part in vocational training and earn his General Equivalency Diploma (GED).

(3) **the kinds of sentences available;**

For all the reasons stated above, given the unique facts and circumstances surrounding this crime, Sonnel Robles respectfully asks that the Court sentence him to a term less than that called for by the advisory guidelines. As the Court said in *United States v. Jones*, 460 F.3d 191 (2d Cir. 2006): "Although the sentencing judge is obliged to consider all of the sentencing factors outlined in Section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances." *Id.* at 195. Sonnel Robles knows that he made a poor decision when he decided to get involved in the instant offense. It was a decision that carried severe repercussions and was presumably, in large part a result of Robles' substance abuse problems. He is also well aware that this violent act will possibly destroy his future plans with his fiancée and her family – a chance for a stable loving family environment that he has never had. Accordingly, a sentence of 87 months, with the recommendation that Robles be placed in the 500-hour Comprehensive Residential Drug Abuse Program, will reflect the nature and circumstances of the offense, the history and characteristics of Robles, the seriousness of the offense and provide adequate deterrence to criminal conduct.

**CONCLUSION:**

In consideration of the factors set forth in Title 18 U.S.C. §3553(a), Sonnel Robles respectfully requests that the Court impose a non-guidelines sentence of 87 months' imprisonment followed by a 3 year term of supervised release. This sentence will be sufficient but not greater than necessary to meet the factors set forth in Title 18 U.S.C. §3553(a). If possible, Robles respectfully requests that he be housed at the Federal Correctional Institution in Fort Dix, New Jersey, so that his family, particularly his fiancée Pamela, is able to visit him during his incarceration. Placement at Fort Dix will also allow Robles to complete educational classes and vocational training in the areas of masonry, brick laying and culinary arts, which he would like to pursue as a career following his incarceration. Further, Robles respectfully requests the Court impose no fine, since he has no savings and does not have the ability to pay a fine.

The defendant, Sonnel Robles, respectfully reserves the right to raise additional issues at the time of the sentencing. Your Honor's attention to and consideration of this submission are greatly appreciated.

Sincerely,

*Margaret M. Shalley*
Margaret M. Shalley

cc:   AUSA David Harbach
      USPO Katrina Minus-Shepard

**EXHIBIT 1**

January 30, 2008

Dear Judge Rakoff,

I Am Maria Navarro, Sonnel's aunt. I am now 38 years old. At the age of eleven, I became a mother to Sonnel. Both of his parents were very young and troubled when Sonnel came into this world. His father passed away when he was only five years. This left only a question mark for my nephew when it came to his dad. Unfortunately, there are no pictures to prove the resemblance Sonnel has to his father. My sister had mental problems since she was a teenager, because of her abusive childhood. This went undiagnosed, which led her to abuse drugs and develop destructive relationships. This ultimately hurt her son. My nephew was physically, and emotionally abused by a monster that was supposed to be a father figure to him. Sonnel has two other siblings in which he has no relationship with, because of the abuse that occurred. Being a child myself, I saved him the best way I could.

Sonnel was forced to live with his grandma and myself. We raised him, and tried hard to be the parents he needed. Struggling to put clothes on his back, we made it. His grandmother did everything for him, and loved him to death. She was also badly abused by her husband. My nephew had to watch this day in and day out. This angel was Maria Garcia. Sadly, she was diagnosed with HIV. Then she passed away. She was a blessing to people, even those that did not know her.

With other family members in and out of prison Sonnel lost the one stable person in his life, his grandmother. As an adult, I realize how important stability is in children's lives and I am sorry my nephew was cheated.

Judge Rakoff, I have two children of my own. Please understand that a nephew to you, is a brother or son to me. That is how I see Sonnel. This is how I raised him. The foundation of my family is built on love, which is most important to me. My nephew's incarceration has deeply affected not only me, but my daughter as well. She is young, but very intelligent. I do not want her experiencing the trauma of being separated from someone who plays such an important role in her young life. Letters and short phone calls are not enough for her. She needs the healthy relationship that she had with Sonnel on a day-to-day basis. This is destroying my family.

I see so much potential in my nephew and his future. Pamela is now, the most stable person in his life. Your Honor, they are truly in love. Please do not take the one thing he has away from him. All he really needs is therapy and possibly a drug program. Sending him to prison for many years will only continue the viscous cycle my family has already lived through. Please help us break away from this bondage. I accept his apology, and he takes full responsibility for his involvement Your Honor, I beg you to have mercy.

Sincerely,

Maria Navarro

**EXHIBIT 2**

Dear Judge Rakoff,

    I am writing to you from my heart. My name is Pamela J. Hayes and I am Sonnel's wife to be. I have been courting with Sonnel for almost 3 years.

    I come from a well-respected family. An example, of how proud I am of that family is people like my uncle. My uncle's name was Stephen P. Driscoll and he was an ESU worker for truck # 9 of New York City. He passed away serving our country in the tragic event 911. I go to church every Sunday and pray for him. I find myself now praying more and more each day for other reasons.

    My fiancé is a good man who was looking for acceptance in the wrong place. When I met him he was very much so full of life. As time grew, so did our love until we became inseparable. I never thought a person could teach me so much about myself the way he did. His passion for literature inspired my own desire for learning. This man radiates intelligence, and I believe in him and our future. Sonnel encouraged me to stop smoking, helped me prepare for job interviews, supported me in making tough decisions, and has prayed with me.

    Sonnel and I were a young couple starting to build a foundation for ourselves and were very much in love. We would come home from work, cook dinner, and talk about how we wanted to get married and raise a family. We were living in the Kingsbridge section of the Bronx, which we did not like, and agreed that it was a dangerous neighborhood. After learning this, we planned on moving to Riverdale.

    For a short while Sonnel was befriended by people who were much older then him. They lured him with drugs, which they provided, and, manipulated his decision making. They used his size and his naivety against him and ultimately to destroy him. I am so desperately sorry that Sonnel could not clear his head for even just one moment to realize this. Now, he sees everything crystal clear. Sonnel has repeatedly apologized to me for putting me in the middle if this nightmare. He knows he was wrong and he takes full responsibility for his actions and his involvement. I forgive him.

    As his wife to be I am making sure that I support him one hundred and ten percent. I have hired a very competent defense attorney that has supported us through this tetramoneous time. This has taken a tole on his soul as well as mine. I feel incomplete with out him and, will do whatever is necessary to better the situation. Judge Rakoff, I beg you to be as lenient as you possibly can in sentencing Sonnel Robles. I do not know any other way to ask you. This is the hardest letter I have ever had to write in my life and I hope it helps.

    I am building a support system for him outside of the prison walls with my family and church. My parents are both hard working law abiding citizens. My mother is a bookkeeper and my stepfather is a Power Supervisor for Metro North. My parents, like any other parents were upset when they heard Sonnel was incarcerated, but they have realized how committed our relationship is. Luckily, they support us fully in this emotionally taxing crisis and when holidays come they miss him also. My stepfather will also be writing a letter representing him and his role in Sonnel's development as a young man.

Judge Rakoff, I can imagine having a job like yours is not easy and I respect the position that you hold. All I ask of you is to impose a sentence on Sonnel that is reasonable, because I think 8 years is too long. Please give him a chance in his young life to rehabilitate himself mentally and spiritually and be the honest, hardworking man I fell in love with. Sonnel is not a threat or a danger to society Your Honor. With the right guidance and direction, Sonnel could help improve the lives of our at-risk youth through his experiences.

Thank you,

Pamela J. Hayes

**EXHIBIT 3**

Edwin Rivas
5805 Fieldston Road
Bronx, NY 10471
718-543-8395

Dear Judge Rakoff,

We have known Sonnel Robles for about 3 years. We know him as Nelson and he is our daughter's fiancé. We have had him in our home for all holidays and a guest at our dinner table on many occasions. During those years we have come to know him very well. Nelson has even cooked dinner for our family on several occasions. Nelson loves to cook and is very talented in the kitchen. We once asked him why he doesn't go to culinary school and work on becoming a chef. His answer was cooking school is one of his many dreams, but to make that dream a reality he needed a better paying job to be able to pay tuition and rent.

Nelson is a man with many dreams and ambitions. All of which centered on making a good life for our daughter and himself. He was always going on job interviews looking to better himself but would always came back frustrated. The next day he'd return to his porter job in the city and begin the job search all over. He was dejected but determined to make a better life for the two of them.

Nelson personality is one of easy going and non-offensive type, but he could also be easily swayed. He has a certain gullibility that I believe was used to persuade him to do what he did. Naturally, the final decision was his and the fact that he pleaded guilty shows that he knows he made the wrong decision. I can't help but believe that Nelson made this choice, due to his desire to provide a better life for our daughter. Unfortunately, this was the wrong way to achieve his goal.

We're not sure what the future holds for him and our daughter because of this separation. But with that aside, no matter what the out come of there relationship is to be, we still strongly believe there is a lot of potential in Nelson. If your honor were to grant him leniency I would be willing to step up and be his mentor. Assist him in acquiring an education in the culinary field or whatever field he chooses. We believe that with an education along with proper mentoring and counseling Nelson can be an asset.

Respectfully,

January 30, 2008

Dear Judge Rakoff,

My name is Andrew Rivas, I am seventeen years old and I am the youngest of Pamela Hayes's siblings. Pamela Hayes is a determined and strong women and I only want the best for her. She hustles day and night to make a living for herself and fights through all abnormal circumstances. She found love in a man named Sonnel. Which in my opinion, I feel they are soul mates. Sonnel stepped into this family and immediately became a big brother figure to me. He's a very dependable, strong man who would do anything for his loved ones. He has given me advice that I still use today, and made my sister the happiest women in the world. They have been inseparable since day one, literally. He was at every family get-together and always gave a helping hand around the house. He made me laugh hysterically all the time, and made me look forward to telling him stories about a girl that I might be interested in. He definitely was a friend to me. He gave nothing but respect to me and my older brother Kenneth, who is eighteen years old. Honestly, it hasn't been the same without his presence. I know deep inside my heart that Sonnel has unconditional love for Pamela. They smile when they look into each others eyes and whisper to each other nonstop. Everyone makes mistakes your honor, and I feel Sonnel is smart enough not to make the same mistake twice. That is my word sir.

With true sincerity,

Andrew Rivas

January 8, 2008

Dear Judge Rakoff:

My name is Sandy, and I am writing in regards to Sonnel Robles. I was introduced to him about three years ago by his now fiancé, and my long time friend, Pamela Hayes.

When I met Sonnel, he was a hard working, caring, respectful and responsible individual. I would like you to know that in the three years that I know Sonnel, he never gave me an impression that he was a criminal or expressed any criminal thoughts or acts. Instead, he was working full time, living with Ms. Hayes and they were planning a good life for their future together.

I was shocked to learn of his arrest because I knew Sonnel, and I could not believe that he would commit any crimes. It is not in his character to do something like this. Your Honor, I strongly believe that Sonnel's judgment was clouded by drugs, which he recently started using, and was pressured into committing this crime.

Sonnel expresses sorrow and regrets his actions and would take them back if he could. He realized what he has done was wrong and regrets it deeply. He acknowledges that his actions not only affected him, but his family, friends and his fiancé, Ms. Hayes. He knows that now his life is on hold and that he cannot start a life with Ms. Hayes for a long time.

Judge Rakoff, I would like you to consider all that I have mentioned above and show leniency towards Sonnel. I understand that the law is the law and there are certain guidelines that need to be followed, but please consider any other alternatives that are available.

Thank you for your time,
Sandy Kootkias

*Sandy Kootkias* (signature)

To Judge Rakoff,

  I, George E. Waters am a retired senior citizen who lives at 75 Walsh Rd. #2D in Yonkers, N.Y. I now work as a security guard to occupy my spare time. I beseech thee on behalf of Sonnel Robles whom I consider to be a young man of impeccable character. I ask you to be as lenient as possible in sentencing or dealing with this individual.

  I am surprised to find this young man in this predicament, however it does not reflect the character of the Sonnel Robles that I know and respect. I feel leniency would do more good then harm for the potential that this young man has to offer the future, public, and community.

  I have always observed this gentleman to be highly respectful and considerate to his fellow citizens.

P.S. I feel this young man needs another chance to redeem himself. Thank you.

                  Sincerely,

                  George E. Waters

*[signature: George E. Waters]*